UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DANIEL LEE PHILLIPS, | |
| Plaintiff, | Case No. 2:20-cv-00039 |
| v. | Chief Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

### I.     Background

Plaintiff Daniel Lee Phillips filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434 (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose of or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 4.) Phillips has filed a motion for judgment on the administrative record (Doc. No. 25-1), to which the Commissioner has responded in opposition (Doc. No. 27). Having considered the parties' arguments and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Phillips's motion for judgment on the administrative record be granted, that the ALJ's decision be vacated, and that this case be remanded for further administrative proceedings consistent with this Report and Recommendation.

## A. Phillips's DIB and SSI Application

On January 8, 2018, Phillips applied for SSI and DIB, alleging that he had been disabled since May 1, 2016, because of four heart attacks, quadruple bypass surgery, angina, and depression. (AR 80, 95, 287.)[1] The Commissioner denied Phillips's application initially and on reconsideration.[2] (AR 109–12.) At Phillips's request, an administrative law judge (ALJ) held a hearing on April 10, 2019. (AR 32–63, 159–64.) Phillips appeared with counsel and testified. (AR 32, 36–57.) The ALJ also heard testimony from Edward Smith, a vocational expert. (AR 57–61.)

## B. The ALJ's Findings

On July 29, 2019, the ALJ issued a written decision finding that Phillips was not disabled within the meaning of the Social Security Act and denying his claims for SSI and DIB. (AR 15–26.) The ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since February 20, 2018, the alleged onset date.

\* \* \*

3. The claimant has the following severe impairments: coronary artery disease, status-post myocardial infarction, and recurrent arrhythmias.

\* \* \*

---

[1] The transcript of the administrative record, (Doc. No. 17), is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

[2] The ALJ's opinion notes that Phillips made a prior application for benefits that was denied on August 16, 2016. (AR 15.) The ALJ did not adopt that decision "as a significant and material change *did* occur" in the period between Phillips's applications—namely, a reduction in exertional level and absence of previously claimed severe mental impairments—"justif[ying] a departure from the prior ALJ residual functional capacity." (AR 21.)

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impartments in 20 CFR Part 404, Subpart P, Appendix 1.

*    *    *

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours, and stand and/or walk for six hours; can occasionally climb ladders, ropes, scaffolds, ramps and stairs; and can tolerate occasional exposure to extreme heat and dangerous hazards, such as unprotected heights, and moving machinery.

*    *    *

6.    The claimant is capable of performing past relevant work as an assistant store manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

*    *    *

7.    The claimant has not been under a disability, as defined in the Social Security Act, from February 20, 2018, through the date of this decision.

(AR 18–26). The Social Security Appeals Council denied Phillips's request for review on June 8, 2020, making the ALJ's decision the final decision of the Commissioner. (AR 1–3.)

## C.    Appeal Under 42 U.S.C. § 405(g)

Phillips filed this action for review of the ALJ's decision on July 15, 2020 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Phillips argues that the ALJ wrongly evaluated the medical opinion evidence, did not appropriately consider the vocational expert's testimony, and failed to properly evaluate Phillips's subjective pain or mention additional physical impairments. (Doc. No. 25-1.) The Commissioner responds that the ALJ followed applicable regulations and that the ALJ's decision is supported by substantial evidence. (Doc. No. 27.) Phillips did not file a reply.

### D.    Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II.    Legal Standards

### A.    Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

## B. Determining Disability at the Administrative Level

DIB and SSI benefits are available to individuals who are disabled, which is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies in the DIB and SSI contexts).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). For purposes of this case, the regulations governing disability determination for DIB and SSI benefits are identical. *See Colvin*, 475 F.3d at 730 (citing 20 C.F.R. §§ 404.1520, 416.920). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "[I]f the claimant is performing substantial gainful activity, then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments [that meets the durational requirement], then the claimant is not disabled." *Miller*, 811 F.3d at 834 n.6. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled." *Miller*, 811 F.3d at 834 n.6. If not, the ALJ proceeds to step four.

*Combs*, 459 F.3d at 643; *see also Walker v. Berryhill*, No. 3:16-1231, 2017 WL 6492621, at *3 (M.D. Tenn. Dec. 19, 2017) (explaining that "[a] claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability and ends the inquiry"), *report and recommendation adopted*, 2018 WL 305748 (M.D. Tenn. Jan. 5, 2018).

At step four, the ALJ evaluates the claimant's past relevant work and "'residual functional capacity,' defined as 'the most [the claimant] can still do despite [his] limitations.'" *Combs*, 459 F.3d 643 (first alterations in original) (quoting 20 C.F.R. § 404.1545(a)(1)); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits [him] to perform past relevant work, [he] is not disabled. *Combs*, 459 F.3d at 643. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, "in light of [his] residual functional capacity, age, education, and work experience," a claimant can perform other substantial gainful employment. *Id.* While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "Claimants who can perform such work are not disabled." *Combs*, 459 F.3d at 643; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

III.     **Analysis**

A.     **Medical Opinion Evidence**

Phillips's central claim is that the ALJ improperly determined that the opinions of his primary care physician, Dr. Johnson, were unpersuasive and that the opinions of Dr. Parrish and Dr. Rubinowitz, two non-examining agency physicians, and Dr. Little, a cardiologist who implanted a medicated stent in Phillips, were persuasive. (Doc. No. 25-1.) Specifically, Phillips argues that Dr. Johnson was the only physician to see Phillips regularly after the medicated stent was implanted and "that post-surgical treatment notes are the only way to evaluate claimants' symptoms and/or impairments." (*Id.* at PageID# 799.) The Court finds that the ALJ did not sufficiently explain how he arrived at his conclusions regarding the persuasiveness of these doctors' opinions and that this error warrants remand of Phillips's action.

For disability claims filed on or after March 27, 2017, SSA regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the claimant's] medical sources."[3] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent

_____

[3]      This is a departure from the regulations governing claims filed before March 27, 2017, which "[g]enerally . . . g[a]ve more weight to the medical opinion of a source who ha[d] examined [the claimant] than to the medical opinion of a medical source who ha[d] not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Those regulations specifically required an ALJ to give controlling weight to a medical opinion from the claimant's treating physician if the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with other substantial evidence in [the] case record[.]" *Id.* §§ 404.1527(c)(2), 416.927(c)(2).

of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors including, but not limited to, evidence showing that the medical source is familiar with other evidence in the record or has an understanding of the SSA's policies and evidentiary requirements. *Id.* §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5).

Supportability and consistency are "[t]he most important factors" in this analysis. *Id.* §§ 404.1520c(a), 416.920c(a). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). In assessing consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The SSA has promised claimants that it "will explain how [it] considered the supportability and consistency factors . . . in [its] determination or decision" and "may, but [is] not required to, explain how [it] considered the [remaining] factors . . . ."[4] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "A reviewing court 'evaluates whether the ALJ properly considers the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

---

[4]      This differs from the regulations governing claims filed before March 27, 2017, which promised claimants that the SSA would "always give good reasons in [its] notice of determination or decision for the weight [it] g[a]ve [the] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

### 1.    Dr. Johnson and Dr. Little

On February 20, 2018, having experienced worsening cardiac symptoms over several days, Phillips was transported by ambulance to the emergency room at Cookeville Regional Medical Center with "severe, constant chest pain." (AR 528.) He was met in the ambulance bay and treated by Dr. Little, who performed a "[l]eft heart cath[eterization], coronary angiography, left ventriculography, vein graft study, LIMA study, primary angioplasty, stenting and intravascular ultrasound of the right coronary artery, iFR study of the circumflex artery and more than 30 minutes of monitored sedation." (AR 528.) In critical care notes documenting this treatment, Dr. Little states that he "spent more than an hour providing critical care to [Phillips] today, which does not include time spent in the cath lab this morning[,]" and "spent time discussing his care with his wife . . . ." (AR 524.) In the "plan" section of Dr. Little's treatment notes from this visit, Dr. Little states: "I have encouraged the patient and his wife that he needs to find employment and go back to work. I see no medical reason why he should be on disability. I believe there will be positive psychological and physical benefits of gainful employment." (AR 527.) This approximate hour-plus of critical care and counseling is the entirety of Dr. Little's treatment of Phillips and the notes from this visit constitute the only record evidence documenting Dr. Little's medical opinion. Phillips had two post-operative appointments following the stent placement with providers at Tennessee Heart, PLLC. (AR 613–23.)

Dr. Johnson has been Phillips's primary care physician since approximately 2013, conducting regular physical examinations, referring Phillips to specialists, and prescribing him medications. (AR 53–55, 557–94, 599–606, 644–59.) Phillips received regular care from Dr. Johnson after Dr. Little performed the stent-implant procedure. (AR 644–59.) In evaluating Dr. Johnson's medical opinion, the ALJ discussed three pieces of evidence: a medical source statement of residual functional capacity completed on January 18, 2018 (AR 426–27); a chest

9

pain questionnaire and mental questionnaire completed on March 1, 2018 (AR 608–10); and a medical source statement of residual functional capacity completed on February 26, 2019 (AR 636). (AR 23.)

In the January 18, 2018 medical source statement, Dr. Johnson noted Phillips's primary symptoms as "chest pain, palpitations, fatigue, dizziness, [and] decreased exercise tolerance" resulting from diagnosed "coronary artery disease with reduced ejection fraction (40–45%)." (AR 426.) Dr. Johnson noted that Phillips experienced "dizziness and fatigue" as symptoms of prescribed medication. (*Id.*) Opining as to Phillips's mobility, Dr. Johnson stated that that Phillips could stand or walk "[a]t least 2 hours but less than 4 hours" and could sit "[a]bout 6 hours in an 8-hour day." (*Id.*) Dr. Johnson found that Phillips could occasionally lift 10 pounds or less and could never lift more than that weight. (*Id.*) Dr. Johnson found that Phillips could never climb or crawl and could occasionally stoop, kneel, crouch, and balance. (*Id.*) Dr. Johnson summarized his clinical findings as follows: "[patient] has coronary artery disease [with] reduced ejection fraction which causes chest pain, fatigue, poor tolerance for sustained physical activity, shortness of breath." (AR 427.) Dr. Johnson also noted that Phillips suffered "[d]epression and anxiety related to coronary disease" and took medication for daily angina symptoms, "but continues to have daily symptoms which limit his ability to work." (*Id.*)

In the March 1, 2018 chest pain questionnaire, Dr. Johnson indicated that Phillips described "sharp, substernal, intermittent" pain that radiated to his shoulder, brought on by "exertion such as vacuuming, walking, [and] lifting." (AR 608.) Dr. Johnson stated that the pain was relieved by "rest or nitroglycerin" after "5-10 min." (*Id.*) Dr. Johnson noted that Phillips had not improved with treatment and had been "recently admitted for chest pain and required placement of stent." (AR 609.) Dr. Johnson also opined that Phillips could not "maintain a work routine without

frequent breaks for stress related reasons"; "maintain an ordinary work routine without inordinate supervision"; or "[m]aintain a work schedule without missing frequently due to psychological issues."[5] (AR 610.)

In the February 26, 2019 statement of residual functional capacity, Dr. Johnson identified his diagnoses of Phillips to include coronary artery disease, hypertension, depression, and hypothyroidism, with symptoms including chest pain, fatigue, and dyspnea. (AR 636.) Dr. Johnson stated that Phillips's symptoms were "severe enough to interfere with attention & concentration required to perform simple work-related tasks during an 8-hour work-day" more than 20% of the time and that Phillips would need to take unscheduled breaks during the work-day. (*Id.*) Dr. Johnson stated that Phillips could stand or walk for less than two hours in a work-day and could sit at least two hours but less than four hours. (*Id.*) Dr. Johnson stated that Phillips could lift twenty pounds or less occasionally, but could never lift fifty or more pounds. (*Id.*) Finally, Dr. Johnson stated that Phillips's symptoms "would require a medical need to periodically lie down due to pain, fatigue, or other impairments during a normal 8-hour work-day" and that his symptoms had lasted or were expected "to last 12 or more consecutive months." (*Id.*)

Considering Dr. Johnson's findings and Dr. Little's treatment notes in evaluating the persuasiveness of the two doctors' opinions, the ALJ found as follows:

> I find the two page Medical Source Statement of Residual Functional Capacity filled out by James Johnson, M.D., on January 18, 2018, to be unpersuasive (Exhibit 3F). On February 20, 2018, which is the claimant's amended alleged onset date, a treating cardiologist [Dr. Little] encouraged the claimant to go back to work as shown below. Moreover, on February 26, 2018, the claimant's ejection fraction was 60% and Dr. Johnson wrote in his treatment notes that Cardiology [at Cookeville Regional Medical Center] had recommended that the claimant return to work (Exhibit 7F at 5).

---

[5]     Although the form asked the provider to elaborate when stating that a patient could not perform these tasks, Dr. Johnson did not provide any further explanation of his opinions.

Thomas Little, MD, a Cardiology Specialist at the Cookeville Regional Medical Center performed a left heart catheterization angiography, left ventriculography, vein graft study, LIMA study, primary angioplasty, stenting and intravascular ultrasound of the right coronary artery, iFR study of the circumflex artery and more than 30 minutes of monitored sedation on February 20, 2018, (Exhibit 6F at pp. 8–10). Afterward, Dr. Little encouraged the claimant and his wife that the claimant needed to find employment and go back to work. He saw no medical reason why he should be on disability. Dr. Little believed there would be a positive psychological and physical benefit[ ] of gainful employment (Exhibit 6F at 7). I find Dr. Little's opinion persuasive.

Thus, the three page Chest Pain Questionnaire and Mental Questionnaire filled out by Dr. James Johnson on March 1, 2018, is not persuasive (Exhibit 10F). Dr. Johnson was the claimant's primary care physician and not a cardiologist or mental health professional, both areas being outside of his field of expertise. Of note, the claimant has never been treated by a mental health professional. As previously stated, cardiologist Dr. Little recommended that the claimant go back to work, as he saw no reason why the claimant should not be working. Dr. Little's specialty is cardiology, which is directly related to the claimant's past heart condition. (Exhibit 6F at 7). On March 5, 2018, at Tennessee Heart, during the one week hospital follow up status post PTCA and drug-coated stent to the distal RCA the claimant denied chest pain, shortness of breath, or palpitations (Exhibits 11F at 9 and 14F at 8). The same was true at Tennessee Heart of April 10, 2018, when the claimant reported no more chest pain since the medicated stent was inserted on February 20, 2018 (Exhibits 11F at pp. 3, 4). The claimant subsequently took Dr. Little's advice and worked at four different jobs in 2018, earning a total of $1,940.75 (Exhibit 6D at 1). At the time of the hearing, he was working for Dollar General Store earning $8.00 an hour and working eight hours a week (Hearing Testimony).

On February 26, 2019, Dr. James Johnson, filled out a one page Medical Source Statement of Residual Functional Capacity (Exhibit 12F). I find this opinion not persuasive for the reasons stated in discussing his March 1, 2018, opinion. Furthermore, since that prior opinion, Dr. Johnson saw the claimant three times, on March 19, 2018, June 26, 2018, and February 26, 2019. In all three of those visits, the objective physical examinations were normal (Exhibit 13F). Accordingly, I find the medical evidence of record substantiates the claimant would have limitations related to his physical impairments as discussed in this decision.

(AR 23.)

Phillips argues that the ALJ improperly assessed the persuasiveness of Dr. Johnson and Dr. Little's medical opinions in this analysis.[6] (Doc. No. 25-1.) Phillips argues that "Dr. Little had no way of knowing whether [Phillips] would fully recuperate . . . Further, Dr. Little never saw [Phillips] again in any follow-up to note his surgical progress. The only physician who has consistently treated [Phillips] post-surgery is Dr. James Johnson[.]" (*Id.* at PageID# 799.) Phillips argues that Dr. Johnson's conclusions are consistent with and supported by the record, including the record from after the stent implant procedure. (Doc. No. 25-1.)

The Commissioner argues that

[s]ubstantial evidence supports the ALJ's finding that Dr. Johnson's opinions were not consistent with other evidence of the record . . . , such as the unremarkable findings on objective and physical examination, Plaintiff's reported activities, which included working after the date he allegedly became disabled, and the fact that Dr. Little, who saw Plaintiff specifically for cardiovascular issues, encouraged Plaintiff to return to work.

As to the "supportability" factor, the ALJ's explanation that Dr. Johnson's opinions were inconsistent with objective medical evidence and in his own treatment notes is also accurate.

(Doc. No. 27 at PageID# 815–16.) The Commissioner further asserts that "the ALJ is not required to discuss factors other than supportability and consistency" and that the ALJ's decision not to address the disparity in the timing and length of the treatment between Dr. Little and Dr. Johnson is therefore of no consequence. (*Id.* at PageID# 817.)

While the post-treating-physician-rule "new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating

<hr />

[6]     Phillips states that the ALJ "fail[ed] to give proper weight to the opinions of the treating doctor, Dr. Johnson under 20 CFR 404.1520c in that Dr. John[son's] opinions are supported and consistent with the record." (Doc. No. 25-1 at PageID# 798.) Although Phillips refers to the weight an ALJ assigns medical opinion evidence, which is not the correct standard applied to claims filed on or after March 27, 2017, he correctly cites the current regulation and refers to the proper standards of supportability and consistency. (*Id.*); *see* 20 C.F.R. §§ 404.1520c, 416.920c.

sources . . . 'they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (quoting *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021)). Specifically, the regulations require that an ALJ provide "'a "minimum level of articulation" . . . in determinations and decisions, in order to "provide sufficient rationale for a reviewing adjudicator or court."'" *Id.* (quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017))). An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021) (alterations in original) (quoting *Warren I*, 2021 WL 860506, at *8). It also "ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone." *Hardy*, 554 F. Supp. 3d at 907 (citing *Blakley*, 581 F.3d at 410).

The district court's decision in *Hardy* provides a relevant example. There, the court rejected an ALJ's finding that two doctors' opinions were unpersuasive. The court noted that, in evaluating persuasiveness, the ALJ "did not refer to [certain detailed] medical findings in the record," "did not explain why she chouse to accept the findings that undercut the opinions and to reject the findings that supported them" and gave "no discussion—no 'articulation'—of the supportability and consistency factors." *Hardy*, 554 F. Supp. 3d at 907. The court found that, "[b]ecause of the greater latitude afforded ALJs under the new regulations [eliminating the treating physician rule], the importance of cogent explanations is perhaps even more important." *Id.* at 908. Although the

ALJ provided an "extensive summarization of the record"—and the Commissioner had argued a "theoretical path that the ALJ could have followed had she properly applied the regulations—that was not a sufficient demonstration that the ALJ had followed the procedure required by law in her analysis. *Id.* at 907–08. The court found that, while the ALJ's summary of the record "included both supportive and contradictory information, it d[id] little to explain the ALJ's reasoning or to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Id.* at 907 (*quoting Warren I.*, 2021 WL 860506, at *8).

The ALJ in this case similarly failed to meet the required minimum levels in articulating his rationale for finding Dr. Little's opinion persuasive and Dr. Johnson's opinion unpersuasive. Instead, the ALJ offered a single paragraph summarizing Dr. Little's notes from his encounter with Phillips and concluded, "I find Dr. Little's opinion persuasive." (AR 23.) This summary assessment, which includes no discussion of how Dr. Little's opinion is consistent with or supported by the other record evidence, falls far short of the "cogent explanations" that the regulations require. *Hardy*, 554 F. Supp. 3d at 907; *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ's failure to state his reasoning is especially consequential here because the ALJ's unexplained conclusion that Dr. Little's opinion was persuasive forms the basis for his assessment of all of the other record evidence.

The most generous construction of the ALJ's decision could find his reference to Phillips's post-operative appointments at Tennessee Heart on March 5, 2018, in which he "denied chest pain, shortness of breath or palpitations," and on April 10, 2018, in which he "reported no more chest pain since the medicated stent was inserted," and his statement that Phillips "took Dr. Little's advice and worked four different jobs in 2018, earning a total of $1,940.75" as consideration of the supportability and consistency of Dr. Little's opinion. (AR 23.) That conclusion would be

speculation on the part of the Court, however, as the ALJ's opinion does not articulate that connection. In the absence of an articulation of reasoning, the ALJ's opinion tends toward the "extensive summarization of the record" rejected in *Hardy* and is not a sufficient demonstration that the ALJ had followed the procedure required by law in his analysis. *Hardy*, 554 F. Supp. 3d at 907. More importantly, the evidentiary value of these selected parts of the record is lessened when the record is considered as a whole.

A reviewing court's determination of whether an ALJ's finding is supported by substantial "evidence must be based on the record as a whole[,]" *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and "must take into account whatever in the record fairly detracts from its weight." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (noting that, while the standards of review are "quite deferential to the findings of the Commissioner," the chief limitation to that deference "is the requirement that all determinations be made based upon the record in its entirety"). A review of the full record shows that the ALJ's conclusions as to the persuasiveness of the relevant medical opinions is not supported by substantial evidence.

The ALJ identified treatment notes from Phillips's two post-operative visits to Tennessee Heart on March 5 and April 10, 2018, in which he stated he was not experiencing chest pain. (AR 23.) A review of the full record, however, shows that this is a limited representation of Phillips's symptoms after the stent procedure. During a follow-up appointment with Dr. Johnson on March 19, 2018, Phillips reported chest pain and heaviness, fatigue, shortness of breath, and dizziness, and Dr. Johnson noted "scattered inspiratory wheezes" upon examination. (AR 655–56.) Although Phillips stated that he had not experienced any anginal episodes since the stent procedure during the April 10, 2018 Tennessee Heart appointment, he stated that that he

experienced lightheadedness when bending down or "do[ing] any movement" and treatment notes state that "[h]is blood pressure has been on the low side." (AR 613.) On June 26, 2018, Phillips saw Dr. Johnson for tightness in his chest, daily recurrent chest pain brought on by exertion, occasional shortness of breath, and fatigue. (AR 650–51.) During his annual physical with Dr. Johnson on February 26, 2019, Phillips once again reported having chest pain often, shortness of breath, and fatigue interfering with daily life (AR 644.) "He report[ed] many of his anginal symptoms improved after stenting in Feb[ruary 2018] and he had hoped" that quitting smoking would help him "to see continued improvement[,]" but "[he] continue[d] to have daily [chest] symptoms . . . [that are] present with exertion and relieved with rest." (*Id.*) Phillips reported that medication did not provide relief and caused intolerable headaches. (*Id.*)

The ALJ's finding that Phillips "took Dr. Little's advice and worked at four different jobs in 2018, earning a total of $1,940.75" and, "[a]t the time of the hearing . . . was working for Dollar General Store earning $8.00 an hour and working eight hours a week" also ignores significant record evidence. (AR 23.) The full record includes Dr. Johnson's notes from the June 26, 2018 appointment in which Phillips stated that he "ha[d] tried to return to work, pushing a[ ] dust mop at a local factory but report[ed] that after 20–60 minutes he ha[d] gradual increase in chest pressure and shortness of breath requiring him to rest for 10 minutes." (AR 650.) Although Phillips described the work as "not strenuous[,]" he continued to experience "recurrent" "chest pain . . . throughout the day requiring frequent stops to rest" and reported leaving work early the week before and not returning since. (*Id.*)

Phillips also testified to significant limitations in his ability to work part-time at Dollar General. Phillips testified that he could walk half a mile to work at Dollar General, but that he then needed to "sit down in the break room for a short time before [he] can do anything" after arriving.

(AR 43.) He stated that, while at work, he could stand from thirty-to-forty minutes at a time, but would then have to rest in the break room when customers were not in the store. (AR 43–44.) The ALJ's "selective reading of the record" to support his findings of persuasiveness fails to "'take into account'" the evidence in the record that "'fairly detracts from its weight.'" *Hardy*, 554 F. Supp. 3d at 909 (quoting *Wyatt*, 974 F.2d at 683).

The ALJ's selective reading of the record is underscored by his failure to address the disparity in length of treatment between Dr. Johnson and Dr. Little. The regulations no longer require an ALJ to address the treating relationship between doctor and patient, but do identify the "relationship with the claimant", including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship as one of the five factors that may be considered. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v), 416.920c(c)(3)(i)–(v). Here, the disparity between Phillips's treatment relationship with Dr. Little and his treatment relationship with Dr. Johnson is stark enough that the ALJ's failure to address it bears mention. *See id.* §§ 404.1520c(c)(3)(i), 416.920c(c)(3)(i). Dr. Little saw Phillips to provide critical care during an emergency room visit. Dr. Johnson saw Phillips consistently for years and provided regular follow-up care after Dr. Little performed the stent implant. (AR 53–55, 524–30, 557–94, 599–606, 644–59.) While the Commissioner correctly notes that Dr. Johnson's post-procedure treatment of Phillips does not automatically make his opinion more persuasive than Dr. Little's (Doc. No. 27), the ALJ's failure to address Phillips's treatment relationships with the two doctors is another gap in the articulation of his reasoning.

The ALJ's opinion fails to provide the kind of "cogent explanation" for his reasoning that the new and more permissive regulations require. *Hardy*, 554 F. Supp. 3d at 908. In the absence of such explanation—and in light of the contradictory record evidence that the ALJ did not

address—the Court cannot find that substantial evidence supports the ALJ's findings regarding the persuasiveness of Dr. Little's and Dr. Johnson's opinions. The Commissioner does not argue that any errors the ALJ made in evaluating these opinions are harmless, and the Court finds that they are not. The ALJ's decision should therefore be vacated and remanded for reconsideration of Dr. Little's and Dr. Johnson's opinions.

### 2. Dr. Parrish and Dr. Rubinowitz

The ALJ found the opinions of non-examining agency physicians Dr. Parrish and Dr. Rubinowitz persuasive. (AR 22–23). The ALJ found that the doctors' proposed "work-related restrictions are *fully* supported by the evidence relied upon and explanation given as well as consistent with the demonstrated severity within the records[.]" (AR 22–23). The ALJ explicitly referenced the supportability and consistency factors in reaching this conclusion. However, the ALJ again failed to consider the record as a whole in evaluating the persuasiveness of these doctors' opinions. For that reason, his conclusion is not supported by substantial evidence. *See Harris*, 756 F.2d at 435.

Phillips argues that the ALJ erred in finding these doctors' opinions persuasive because Dr. Parrish and Dr. Rubinowitz did not review records from after Phillips's February 20, 2018 stent implant and their opinions thus "lacked any significant post-surgical evaluation of [Phillips's] ongoing symptoms." (Doc. No. 25-1 at PageID# 798–99.) This is reflected by the doctors' summaries of Phillips's treatment, in which they quote Dr. Little's post-surgery recommendation that Phillips work without addressing any of the longitudinal record evidence of Phillips's symptoms. (AR 90, 124–25.) The ALJ's finding that these doctors' opinions are persuasive suffers from the same deficiency. *See, e.g., Rogers*, 486 F.3d at 249; *Wilson*, 378 F.3d at 546. Because the record evidence that these doctors did not consider—and that the ALJ did not consider in

evaluating their opinions—alters the support for their conclusions, the ALJ's finding that their opinions are persuasive is not supported by substantial evidence.

The ALJ also does not address the fact that neither Dr. Parrish nor Dr. Rubinowitz examined Phillips. (AR 22–23.) As the regulations state, a "medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder." 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v). Again, while an ALJ is not required to consider the treating relationship in evaluating persuasiveness, the ALJ's reliance on physicians who never examined Phillips without noting that fact adds additional support to the conclusion that the ALJ's decision is not supported by substantial evidence.

Like the ALJ's evaluation of Dr. Little and Dr. Johnson, substantial evidence does not support the ALJ's persuasiveness evaluation of Dr. Parrish or Dr. Rubinowitz. *Wilson*, 378 F.3d at 546. The ALJ should reconsider Dr. Parrish's and Dr. Rubinowitz's opinions on remand.

### B. Vocational Expert Testimony

In finding Phillips capable of light work, the ALJ relies on Vocational Expert Edward Smith's testimony. (AR 21.) The ALJ states that

> [t]he Vocational Expert testified that based upon the claimant's residual functional capacity, the claimant could return to the past relevant work of *assistant store manager*. . . . Review of the evidence shows that at all times relevant here, the claimant remained able to perform this position.

> The Vocational Expert's testimony shows careful analysis of the claimant's impairments and limitations. Accordingly, I accept the Vocational Expert's testimony and find the demands of this past relevant work does not exceed the residual functional capacity.

(AR 24.)

In the hearing, the ALJ asked for Smith's consideration of a hypothetical person who has

the same age, education and prior work experience as that of the claimant. Further assume that the individual can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently with normal breaks in an eight-hour day.

This person can sit for six hours and stand and/or walk for six hours. Can occasionally climb ladders, ropes and scaffolds as well as ramps and stairs. Can tolerate occasional exposure to extreme heat and dangerous hazards such as unprotected heights and moving machinery. Could this hypothetical individual perform any of the claimant's past work?

(AR 58–59.) Smith responded that this hypothetical person would be able to perform Phillips's past relevant work or other work in the national economy. (AR 59.) The ALJ also asked about an individual with the same abilities who would need "at least two additional 15-minute rest breaks on a consistent basis" in addition to the "normal breaks in an eight-hour day." (AR 59–60.) Smith responded that such an individual would not be employable. (AR. 60.) Phillips's attorney also proposed three hypothetical workers to Smith: an individual who would be "off task due to . . . fatigue issues more than ten percent of a given workday outside of the normal customary breaks with regularity[;]" "an individual [who] had two or more absences per month[;]" and "an individual [who] needed to lie down periodically throughout the day[.]" (AR 60.) Smith testified that each of these hypothetical individuals would be unemployable. (AR 60.)

At the hearing, Phillips testified that he needed to lie down three to four times a day (AR 51–52), which is consistent with his February 12, 2018 Function Report in which he reported that he is "[u]nable to work for a long time, ha[s] to rest every 20 min[utes]. Sometime[s] having to lay down to help with the chest pain and exhaustion. Not being able to pick up heavy objects." (AR 256.) Phillips also testified to needing to take breaks after standing for thirty to forty minutes at his part-time job at the Dollar General Store. (AR 43–44.) As noted above, Phillips told Dr. Johnson he "ha[d] tried to return to work, pushing a[] dust mop at a local factory but report[ed] that after 20–60 minutes[,] he ha[d] gradual increase in chest pressure and shortness of breath requiring him to rest for 10 minutes." (AR 650.)

21

Smith testified that an individual who experiences fatigue, requires frequent breaks, and must lie down during the day to relieve chest pain—the symptoms described by Phillips in his testimony and reflected elsewhere in the record—would not be employable. (AR 59–60.) The ALJ's reliance on Smith's opinion as to a hypothetical individual who did not exhibit these symptoms—and his failure to consider Smith's testimony as to the more limited examples—is not supported by substantial evidence for the same reasons his findings regarding the opinions of Dr. Little, Dr. Parrish, and Dr. Rubinowitz are not supported by substantial evidence. It does not consider the record as a whole and ignores evidence that significantly detracts from a finding that substantial evidence supports the ALJ's conclusions.

### C.      Remaining Arguments

Phillips also argues that the ALJ erred in determining his RFC and in failing to develop the medical record regarding Phillips's other conditions. Because Phillips's case should be remanded to the ALJ for further proceedings consistent with this Report and Recommendation on the grounds already stated, the Court need not address these arguments. If necessary, Phillips may raise these issue again on appeal. *See Dawes v. Saul*, No. 3:19-cv-00001, 2020 WL 587426, at *8 (M.D. Tenn. Feb. 6, 2020), *report and recommendation adopted sub nom. Dawes v. Soc. Sec. Admin.*, 2020 WL 906227 (Feb. 25, 2020); *Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014).

### IV.      Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Phillips's motion for judgment on the administrative record (Doc. No. 25) be GRANTED, that the ALJ's decision be VACATED, and that this case be REMANDED for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 17th day of August, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge